﻿Citation Nr: AXXXXXXXX
Decision Date: 11/30/20 Archive Date: 11/30/20

DOCKET NO. 191209-48589
DATE: November 30, 2020

ORDER

Entitlement to service connection for obstructive sleep apnea (OSA), to include on an undiagnosed illness basis, is denied.

FINDINGS OF FACT

1. The Veteran served in the Southwest Asia theater of operations during the Persian Gulf War.

2. The Veteran is not shown to have an undiagnosed or multisymptom illness manifested by problems sleeping.

3. The Veteran’s OSA did not originate in service and is not otherwise etiologically related to his active service, to include service in the Southwest Asia theater of operations.

CONCLUSION OF LAW

The criteria for service connection for OSA, to include on an undiagnosed illness basis, have not been met. 38 U.S.C. §§ 1110, 1112, 1117, 1118, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.317.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from February 1987 to February 1993, including service in Southwest Asia.

The decision on appeal was issued in November 2019 and constitutes an initial decision; therefore, the modernized review system, also known as the Appeal Modernization Act (AMA), applies. 

In the VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement) (NOD), the Appellant elected the Direct Review option; therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

Entitlement to service connection for OSA, to include on an undiagnosed illness basis, is denied.

The Veteran contends that his OSA is directly related to active service, to include service in Southwest Asia during the Persian Gulf War. Specifically, the Veteran contends that his sleep problems started following his combat tour in Desert Storm but may also be attributable to other incidents or conditions; he has specifically indicated that his symptoms are not new symptoms due to weight gain. He asserts that he initially reported his problems sleeping immediately following active service, but he never received treatment until he had a sleep study done in 2019. 

The AOJ found that the Veteran has received a diagnosis and treatment for OSA. Thus, the question in this case is whether the Veteran’s OSA is etiologically related to his active service, to include his service during the Gulf War. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). In order to establish entitlement to service connection, there must be (1) evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) a causal connection between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Certain chronic diseases are subject to presumptive service connection which develop to a compensable degree within one year from separation from service even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1112, 1113; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). Continuity of symptomatology may also provide a basis for a grant of service connection for those diseases defined as “chronic” by VA. 38 C.F.R. § 3.303 (b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Service connection may also be established on a presumptive basis for a Persian Gulf Veteran who exhibits objective indications of a qualifying chronic disability either during active service in the Southwest Asia Theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2021, and which by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C. §§ 1117, 1118; 38 C.F.R. § 3.317(a)(1). The Veteran’s military personnel records indicate active military service in the Southwest Asia Theater of operations during the Persian Gulf War. As such, the Persian Gulf statutory and regulatory provisions may be applicable in this case. 38 C.F.R. § 3.317(e)(1)(2).

Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, any reasonable doubt is resolved in favor of the Veteran. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

The Veteran’s service treatment records (STRs) are silent for any complaints, treatment, or diagnosis related to any sleep disorder. Notably, a December 1991 STR, notes that the Veteran reported symptoms of congestion, drainage, coughing, wheezing at night, and shortness of breath with exercise; an assessment of allergic rhinitis or nocturnal/exercise induced asthma was noted. Additional STRs note that the Veteran reported similar symptoms of coughing, congestion, and shortness of breath; however, none of these records mention a sleep disorder. Moreover, the Veteran denied any frequent trouble sleeping upon separation in November 1992, and his separation examination was silent for any treatment or diagnosis for a sleep disorder or sleep related symptoms. 

Early post-service medical evidence reflects that the Veteran reported episodes of difficulty falling and staying asleep, generally in the context of his mental health treatment. Specifically, a February 2000 VA examination for posttraumatic stress disorder notes that the Veteran reported ongoing difficulty falling asleep, feeling tense, and frequently awaking. The examination notes that the Veteran was prescribed medication to help with his anxiety. A June 2014 PTSD VA examination also notes sleep disturbances, such as problems falling or staying asleep, and chronic sleep impairment. 

A November 2014 medical treatment record notes that the Veteran reported snoring and apneic spells for which he wanted an evaluation. A sleep clinic consultation was placed. A January 2016 medical treatment notes that the Veteran reported anxiety and sleeping issues on and off. 

An August 2017 medical treatment record notes that the Veteran appeared for an initial sleep consultation, noting that the Veteran reported snoring and witnessed apneas; he denied sleepiness. The record notes that the Veteran was to be scheduled for a prior consultation in 2014, but the Veteran was unable to be reached to schedule the appointment. An assessment of suspected OSA was noted, and a sleep study would be scheduled. The record further notes that the Veteran had a history of PTSD/anxiety, and psychiatric disorders can contribute to both insomnia and hypersomnia. The Veteran was encouraged to work with Mental Health to optimally manage these conditions with the appropriate psychotherapy and pharmacotherapy. Additionally, the Veteran had a history of supraventricular tachycardia (SVT) and asthma and a pulmonary consultation was pending. Finally, the record notes that, due to obesity, the Veteran was encouraged to discuss weight control with his primary care provider. 

In March 2019, the Veteran underwent a sleep study, which indicates a diagnosis of severe obstructive sleep apnea; however, the record notes that the findings required further evaluation. An October 2019 medical record notes that the Veteran underwent another sleep study; a diagnosis of severe obstructive sleep apnea was confirmed. 

The Veteran was afforded a VA examination for his sleep apnea in November 2019, which notes a diagnosis of OSA. The examination notes that the Veteran was diagnosed with obstructive sleep apnea in October 2019, following a sleep study, for symptoms of daytime fatigue, disrupted sleep, and witnessed apneas. The initial consultation was placed in August 2017 for symptoms described at that time. The examiner indicated that the Veteran reported that the symptoms are long-standing, dating back over 25 years to when he was on active duty, although there is no discussion of the symptoms nor concern for possible sleep apnea after review of his STRs. The examination notes that, during a phone conversation, the Veteran indicated that, during active duty, his wife at the time told him that he was waking up and had “difficulty breathing” at night. The Veteran also reported occasional difficulty with daytime breathing while he was on active duty that initially began while deployed to the Gulf region; however, it was later determined his daytime breathing difficulty was due to mild intermittent exercise-induced asthma, and he now uses an albuterol inhaler to control the breathing symptoms with good results. 

After a review of the available records in conjunction with a telephone interview with the Veteran, the examiner opined that the Veteran’s OSA was less likely than incurred in or caused by the claimed in-service injury, event or illness. The examiner reasoned that the Veteran was referred for a sleep study in 2017, 24 years after his discharge. There is no report after review of his STRs to indicate any concerning symptoms at that time related to possible sleep apnea nor difficulty performing his duties due to fatigue. However, the examiner indicated that asthma for this Veteran is a separate service-connected disability and an unrelated respiratory condition involving spasm of the bronchial system within the lungs that has no pathophysiological relationship to the known mechanism of sleep apnea, which is a temporary obstruction of the oropharynx outside the lungs while sleeping. The examiner noted that loud snoring, witnessed apnea, and daytime fatigue are concerning symptoms of possible sleep apnea that often lead to a sleep study. Only during a sleep study can the diagnosis of sleep apnea be accurately made. Without a sleep study these “sleep problems” are symptoms that may not represent a pathological condition and may be related to situational stressors at that time. Given the amount of time that had passed since the report of the symptoms first occurred, reportedly in the early 1990s, it makes the claim the Veteran’s sleep apnea was incurred in service less than likely.

The Board acknowledges that the Veteran was not specifically afforded a Gulf War examination nor have medical opinions been obtained addressing whether his difficulties sleeping constitute qualifying chronic disabilities resulting from an undiagnosed illness or are a part of a medically unexplained chronic multisymptom illness; however, the Board finds that such an examination and opinion are not necessary. As discussed below, the Veteran has known clinical diagnoses for these symptoms, to include OSA, and OSA is not a qualifying chronic disability resulting from an undiagnosed illness or part of a medically unexplained multisymptom illness requiring an opinion as to whether it was related to a specific exposure event experienced by the Veteran during service in the Gulf War. Consequently, a remand to obtain another examination or opinion would do nothing for the appeal other than occasion a delay.

Turning to the evidence of record, the Board notes that there is no indication in the record that the Veteran had any sleep related symptoms with an unknown etiology. Indeed, STRs that note shortness of breath or wheezing at night were attributed to allergic rhinitis and/or asthma, and the November 2019 VA examiner, considering his reports of difficulty breathing at night during service, found this to be due to his service-connected asthma. Early post-service medical treatment records note difficulty falling or staying asleep in the context of his mental health treatment as related to anxiety symptoms, and later reported symptoms of snoring and witnessed apneas prompted a sleep study, which ultimately resulted in a diagnosis of severe OSA. 

Because the Veteran’s symptoms of difficulty sleeping, including snoring, apneas, and fatigue, have been specifically attributed to a known diagnosis, and such is not a condition for which the Secretary has determined a presumption of service connection is warranted under 38 C.F.R. § 3.317(c), service connection for these symptoms as a result of an undiagnosed illness is not warranted. Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for difficulty sleeping, to include OSA, due to an undiagnosed illness under 38 C.F.R. § 3.317.

The Board additionally finds that entitlement to service connection for OSA on a direct basis is not warranted in this case. The earliest medical evidence of record indicating treatment for sleep apnea is more than 20 years after separation from service. The Board notes that, although not a dispositive factor, the passage of time between the Veteran’s discharge and an initial diagnosis for the claimed disorder is one factor that weighs against the Veteran’s claim. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). 

Additionally, there is also no probative medical opinion of record indicating that the Veteran’s sleep apnea was incurred in or otherwise related to his active service, to include his service in Southwest Asia. The November 2019 VA examination indicates that the Veteran’s sleep apnea was less likely than not related to his military service. The Board affords this opinion great probative weight because the examiner thoroughly reviewed the Veteran’s medical records, including his STRs; conducted a phone interview, eliciting lay responses from the Veteran; and considered this evidence along with an evaluation of the disabilities in rendering the opinion. There is no medical opinion to the contrary. Moreover, there is no competent medical or lay evidence demonstrating continuity of symptoms since service. 

In this regard, the Board acknowledges the Veteran’s belief that he has problems sleeping due to OSA began during active service and are related to his active service, to include his service in the Gulf War. As a layperson, the Veteran (and his former spouse) is competent to observe and report symptoms of difficulty sleeping and express when these symptoms began; however, in this case, the Veteran is not competent to determine the cause of his symptoms because it would involve medical inquiry into biological processes, anatomical relationships, and physiological functioning, particularly in light of the Veteran’s additional diagnoses of a mental health disorder and asthma, which also include symptoms of difficulty sleeping and problems breathing. Such internal physical processes are not readily observable and are not within the competence of the Veteran in this case, who has not been shown by the evidence of record to have medical training or skills. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006). Thus, the Board finds the lay assertions in this regard are outweighed by the medical evidence of record. 

Based on a review of the evidence, the Board finds that service connection is not warranted for the Veteran’s claims for OSA. As the preponderance of the evidence is against these claims, the benefit-of-the-doubt rule does not apply, and the Veteran’s claim of entitlement to service connection for obstructive sleep apnea, to include on an undiagnosed illness basis, is denied. See 38 U.S.C. § 5107.

 

Kelli A. Kordich

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board D. Hite, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.